If there's any particular issue the court has in mind that we want to address, that would be it. You want to, I'm sorry, you want to attack foe, right? Correct. And is it two different grounds that you're attacking? For example, one, whether the Veterans Court has the authority to do this sua sponte, and then number two, even if it does, if the VA waives the timeliness issue, then in the face of an express waiver by VA, then they don't have the authority. See how that's two different questions? Well, I think the way I framed it is that there's no evidence that the government waived the issue. And they couldn't because of the court's preemptive order pursuant to both. Well, the preemptive order simply asked them, what are their thoughts on this? And then they came back and said, yeah, there's a timeliness defect here and there's no equitable tolling. Right, but what I'm saying is both can't even add. In other words, they can't even raise the sua sponte. They're not in the business of raising issues for the parties. So that's the both question. That's the both question. Okay. And the question is, the other part of both is, if you agree with me that the court shouldn't be doing that on any issue, whether it's timeliness issues or anything else, the question is, what's appropriate, given that there's no evidence that either way that the secretary would have raised the issue? And I've argued, does that make sense? Yeah. So the question is, it's a unique situation. From my research, I couldn't find any case that had to do with it. Can I move you now to the, as you invited. Okay, let's assume we're at equitable tolling. Let's assume we reject or leave aside the both question for a moment. I guess what I don't understand is, even if we accept the stop clock approach, I think my understanding is the stop clock approach would apply in equitable tolling once she receives the notice. That goes to how much time she gets after the fact, whether she gets the full amount or whether a due diligence standard necessarily applies. But I have questions about the first part of what happened, because it seems to me the court and the veterans court concluded that she failed to exercise due diligence in that first portion. Stop clock wouldn't apply to that first portion. There's a due diligence standard. Right, the element of due diligence does apply to the tolling period or the extraordinary circumstance period. But my contention is that the government conceded, at least in part, that there was due diligence. I mean, you can't have… We're talking about the period until she got the receipt. Right. In other words, they never challenged the due diligence. If you look carefully at the pleadings, both literally and in context, they never challenged the due diligence during the extraordinary circumstance period, that is, from the time the statute… So where did the court come up with that on its own? Well, if you look carefully, the court's opinions conflicted on that. I mean, they were all over the place. At first they indicated that the government's challenge to the due diligence was during the time after the extraordinary circumstance, and then they went off and then they claimed that we didn't allege or prove due diligence during any of that. And you're saying that the government had never alleged a failure of due diligence beforehand? Right. No. If you look at the colloquy, they later changed it. What is later? At the time of the colloquy. In other words, there was pleadings, the court invited pleadings pursuant to both, and they pled that, one, the homelessness was an extraordinary circumstance, and that caused a delay up until either September 27th when the veteran called and found out that there was a board decision out there or when they mailed it October 6th. Take either one. I don't care. But you can't have due diligence if the government is conceding that that caused the delay. Right. They're conceding that there's a defined period of extraordinary circumstances. So you're saying they can't have due diligence if necessarily there was due diligence. Right. They necessarily conceded it. You can't – otherwise we're playing a crazy game of semantics. So what if we find that they didn't concede due diligence during the tolling period, during the time of homelessness? So, well, Ron, I mean, I'd lose. I mean, that would be an easy one, wouldn't it? Wait, and you'd lose because that's something – Well, she filed – I mean, we can see that she filed 33 days past the 120-day period. And you'd lose because that's not a – why, because that's not a reviewable question before Ron? No. It means that we missed the deadline. In other words, she had 120 days under 7266. She filed 33 days after that period. So whether you're at the lower level, upper level, 33 days passed, and we don't – so – I guess – let me see if I can understand this. If the stop-the-clock theory applies to equitable tolling in these kinds of cases, then if you can prove during that tolling period, extraordinary circumstance, causation for delay, and also that you were reasonably diligent during that subset of time, then equitable tolling ought to apply. Correct. And in this particular instance, you're saying the government agrees with you that it's an extraordinary circumstance, and the government conceded somehow both causation and diligence, and that's why you never had to put on a case for diligence or anything else. Right. Is that right? Yeah. But if we interpret the record differently and say, well, it doesn't look like a concession on diligence, maybe there's a concession on causation, maybe not, but there certainly isn't a concession on diligence, then – We lose. Then the case is over. Okay. But my question is, is how can you have a concession of causation without – and not also be conceding due diligence? I just – I thought about it, thought about it, and I think it's telling that the government in its responding report never argued it. I mean I spent a great deal of time explaining how can you reasonably interpret these statements they've made. And they gave no response to that. They just simply said, well, the court characterized it as a question of fact, so it's non-reviewable. Let me ask you about that. I mean equitable tolling is this very well-established doctrine that has three factors, and everybody agrees with that. And I guess you're saying that if the first two factors are established, then just as a matter of course, practically speaking, you always get diligence, get swept in with factor two causation. Is that what you're saying? Well, it depends. That's what I'm hearing from you, and I'm trying to figure that out. Okay. It's rare that anybody would stipulate the causation, but what they did is this. They assumed that the McCreary, which is the reasonable extension, not the stopglock approach, applied. So that was the legal framework they used. So what they did is they pitched it this way. The secretary said, look, we'll concede that there's extraordinary circumstances, and we'll concede that extraordinary circumstances cause a delay, but not the prevention of the filing of the NOA within the statutory timeline. That way they could look good to the court, but the secretary in its benevolence will helpfully— I just want to make sure I understand. So you're suggesting that the government was focusing on the second period of time, and if the stopclock didn't—  Let me finish the question. If the stopclock approach didn't apply, then they would win because of the absence of due diligence at the back end, and so they didn't have to fuss around with the threshold time before the 90 days. Is that your view? That is my view. Okay. Is it your view that that translates to concession? Maybe it's not anything. They didn't respond to that particular element of whether there was diligence during the equitable tolling period, but I don't know how that equates to a full-blown concession that in fact Ms. Jaco was diligent. Well, if they say that—I mean I think it's a reasonable interpretation. I think it's the only reasonable—I mean if they say she's homeless, and it's not her fault, and it's not her fault that she didn't get the mailing. They've conceded that. They said at the point of October 6th when they mailed it, that's the time it ended, extraordinary circumstance ended. So I don't see—and they don't argue in their pleading, which is what's controlling. They don't argue that there was a missing due diligence during the extraordinary circumstance period. There's no other way that I can interpret it. Well, they are defending what the court of CABC said, and they clearly said there's no due diligence throughout. They made a finding. I don't know what the record was, but clearly the CABC reached it and found no due diligence on either end. Yeah, but that raises another question, whether they can override the concession. In other words, there's no finding to be made. I mean you can't play the game, well, okay, we'll stipulate, we'll concede this and this. And then all of a sudden I'm before the court, and they're arguing not only—they're saying where's the beef? Why didn't you put this on and this on? And I'm saying because it wasn't an issue. They conceded that, and I would just like to know conceptually how you can have a lack of due diligence, and yet say that the extraordinary circumstances period lasted for this defined period of time. I just—I'm thinking how could it possibly work out? Well, maybe we— I mean is that— We may—if you want to reserve the rest of your rebuttal, we may find out from the government. Okay, but I just want to say, I think—just one quick thing. Absolutely. I think that exalts sort of formalism over substance. In other words, right, they didn't go one, two, three. These are the elements. I think we're lawyers. We can apply logic concepts, and I think conceptually I don't know how you can do it. I really don't. Anyway, I'll reserve it. Good morning, Your Honors. May it please the Court. I'll first ask that the Court affirm the judgment of the Veterans Court, and then I'll proceed directly to the equitable tolling issue since that seems to be of most interest to the Court. Under any formulation of the equitable tolling requirement, the claimant that's seeking to have a deadline equitably tolled must demonstrate diligence. And under any formulation, we can argue that there was a factual finding by the Veterans Court. Yeah, but as you heard, your friend, we heard, there's a question, though, about whether the government made a concession or never seemed to argue the diligence, and that's based on the concession. So what do you have to say about that? What concessions, if any, were made? The government did not concede that Ms. Chico acted diligently. The government, the Secretary conceded that homelessness is an extraordinary circumstance that might present a basis for equitably tolling the statute of, or the deadline, the time limit for filing a notice of appeal. The Secretary did not concede causation, and the Secretary did not concede diligence. And if the Court looks at page 21 of the Joint Appendix, which is the brief that the Secretary filed before the Veterans Court, in the beginning on the first full paragraph, the second sentence, she also failed to demonstrate any due diligence in attempting to file her NOA. So I don't read that as a concession of any type, that there was diligence. Okay, well let me ask you, let's delve a little deeper into that. Your friend says that the government conceded causation, and he also said, as part of that perhaps, that the government conceded it wasn't her fault that she didn't get the mailing. Did the government concede that, either? The Secretary did concede that it had no basis to suggest that it wasn't her fault that she was homeless. What about not homeless, but that she didn't get the mailing? If the homelessness was the result of the failure to get the mailing, then that necessarily is so, right? Not necessarily. But I think that this is part of the difficulty of this, is that as this Court very recently noted in Dixon, it's the appellant's obligation to put forth evidence to the Veterans Court as to why equitable tolling should apply. Yeah, but the argument here that your friend makes is that, at least we're only talking about the first period of time, and that she was under the view that if the government was conceding that the clock would start running only after the 90 days, then there was no need for them to come forward with evidence. Now the CAVC made a finding that she was not diligent during that threshold period. What argument did the government make with regard to that? What's the record evidence with regard to her absence of diligence? Because that's what they found. Respectfully, I think the question is a little reversed. It's her obligation to point to the record to show some diligence. Okay, so my question is, is it a fact that the government never demonstrated in any way, shape, or form or made a legal argument in any way, shape, or form that she did not act diligently during that first period of time? It looks like the government was only saying that she didn't act diligently after she got the notice. Well, I think that's certainly very clear. If everything had been told, that wouldn't matter. She had plenty of time. Right. But there was certainly no concession by the Secretary that she acted diligently during the first time period. Well, can you... So what is... I guess I'm having a hard time. You're much more experienced than I, obviously, in these cases. But what kind of factors would you look for in the absence of due diligence? I mean, if the government is saying she didn't act diligently and all you're saying is we didn't say a peep about that but they've got the affirmative burden, it seems to me once you establish she's homeless, what more do you need for due diligence purposes? In any kind of extraordinary circumstances, there's going to be a spectrum of factors that could either indicate reasonable diligence or might not indicate reasonable diligence. So what indicated might not reasonable diligence here? So, for example, I mean, again, I really... I don't want to hesitate to sort of put out factors as to what she could have done or should have done, but facts that might have suggested reasonable diligence might have been contacting the VA on a basis, contacting her service representative. She had a veteran service representative representing her during the board that also did receive a copy. Did you ever... Is there anything whatsoever... I understand your answer might be there is nothing but we don't have the burden, but bear with me. Is there anything on the record at all where the government secretary made any argument that there's a question even about reasonable diligence for the first period, as Judge Mayer said? We're not talking about the second period, we're talking about the first period. I would have to go back. Nothing comes to mind, Your Honor. There may have been some statements made during the oral argument before the three-judge panel but it's not coming to mind. And I think the court's correct that our answer would be that it remains the claimant's burden to demonstrate diligence under any... Do you recognize that there are some circumstances in which if diligence isn't even called into question, one might fairly assume that it's not even on the table? That question is not even on the table? It could be circumstances... Certainly there could be circumstances like that. Okay. So, for instance, if she had been, to take another case, in a coma for that period, even if the secretary said nothing and even if the other side put forth nothing, the government would not be here saying, well, they had a burden to prove that she was not diligent even though there was a fact that she had a coma was on the record, right? That would be a hard argument for us to make, I agree. So it's not in all cases that they have the burden, it's only in some. No, the formulation is that... Under the new formulation, equity rewards the vigilance. And there's always a diligence requirement in equitable tolling and that's why we say neglect and things like that aren't sufficient to demonstrate... Yeah, but there was no question of neglect here. Neglect suggests that somebody raises a question of neglect. Here there's no assumption, there's no presumption that there was neglect in the absence of them disproving it. I agree that there may be some factual circumstances, some facts that are put forth on the record that would either maybe presume diligence or somehow, as in the court's example, the coma, those factual situations might obviate that. But the general proposition is that diligence is required and there was never a concession by the Secretary that simply because Ms. Chico was homeless, which we concede is an extraordinary circumstance, that could warrant equitable tolling under some factual circumstances, that there was any suggestion that she exercised diligence. But going on to the earlier question of this bold issue, why is it permissible for the court to take the Secretary's side of the case and raise an issue with the Secretary who had chosen not to raise or maybe overlooked? But you could see why in a case of a coma or even homelessness, the Secretary might say, well, it was late, but we're going to overlook it. And they can't because it's not jurisdictional. So why is it the duty of the court to sit in the Secretary's office and raise the issue on his behalf? I mean, doesn't that make an appendage of the VA as opposed to a court? No. Article I, though it may be? No, Your Honor. The court has certainly its own inherent power to assure compliance with rules that apply to its court. And although 7266 is not... The Supreme Court says it's waivable. The Supreme Court has said it's not jurisdictional. And the Supreme Court also said that 7266 is an important procedural rule. Nothing in Henderson, and indeed nothing in any of the Supreme Court's jurisprudence, indicates that the Veterans Court lacks the authority to look and see, particularly in this case where Ms. Chico in her own notice of appeal identifies the Veterans Court. I'm late, and this is why. But this rule that they've issued applies to all cases, right? It says that their clerk will raise this every time a case is filed. That appears to be beyond the time. Both said that normally the clerk is going to be the first party or the first person, the first party, to notice. And so that it wouldn't be... Again, for purposes of judicial economy and streamlining, in the normal case, the clerk's going to notice it's late. And in this case, as the court proposed in Boves, the court is going to give the parties a full and fair opportunity to brief the issue, to address the issue, and to decide the issue before reaching the merits of the case. But if it wasn't an issue in the first place, why isn't the clerk's duty to bring it up? It's not the court's case, it's the party's case. We would answer that question. Article III, of course, is jurisdictional. If civil cases are late, there's no jurisdiction. And of course, in those cases, the clerk has the duty to raise it. But not in this case. But even in district court cases where it's not a jurisdictional issue, in Day v. McDonough, and another case I can't remember the name of, the Supreme Court has said, and those were habeas cases, which aren't jurisdictional times of time limitations, the Supreme Court has said that the court is not obligated to avert its eyes when it sees that there's a timeliness issue. The real concern is to make sure that the parties have a full and fair opportunity to address the issue. The court is certainly precluded from revising a knowingly waived affirmative defense. But that's not the situation here. Those habeas cases are a smack of criminal law. I realize they're civil. But they come up through a criminal activity, and the court is more solicitous to the criminal side of its document. It's not jurisdictional in a criminal case. And this is sort of quasi-criminal, so they give them a little more leeway. That has nothing to do with what we're talking about here. This is purely civil. It's a purely civil case. And again, my knowledge of criminal law is not too hot either. But a habeas petition is a civil petition. And the broader question here is really, may the Veterans Court identify a noncompliance with a statute that implicates its own procedure? Does the authority lack the power to address that issue? And we believe that it's almost the flip side. If the court has the authority or the power to excuse timeliness under the doctrine of equitable polling, surely it also has the authority to identify the issue of untimeliness and provide the parties with the opportunity to address the issue, to put forth evidence as to why the untimeliness should be excused, and to do that in a way that doesn't waste the party's time and doesn't waste the court's time. And what if the VA wanted to expressly waive challenging a time violation? What would Dave v. McDonough and Wood v. Milliard say in that circumstance? There's certainly nothing that prevents the Secretary from saying we're not going to challenge timeliness in this case. Maybe the tougher question would be, let's say, to take an extreme example, the appellant says, I just didn't get around to filing it on time. So that would be a clear case under the court's precedent of neglect that would not constitute. No, but I'm asking a question about the VA actively informing the Veterans Court that they think equitable polling should apply or they don't think there's any real violation of the time limit. Then would that preclude the Veterans Court from looking at it? I don't think it would prevent the Veterans Court from looking at it. I think that would be a much more difficult case. Okay, from reaching it. From reaching it. Yes, it would. No, I don't think it would prevent it. I think that would make it a more difficult question. What happened in Dave v. McDonough and Wood v. Milliard, though? Wasn't there some kind of active waiver there? And then in those instances the court said, well, then the court shouldn't look into it any further. It should stop. Right. No, the court's correct. In Wood v. Milliard, the state deliberately waived time limits, and the Supreme Court found that it was an abuse of discretion not to. And I understand the court's just trying to get the parameters of where this might apply. I don't think that the Veterans Court, like this court, has to accept a concession or a waiver if to do so would be contrary to law. And that's right now the only example that I can think of is, again, if we just said. . . Well, it's not like this court. This court cannot waive it. We do not have jurisdiction, so we can't waive it. Right. So this is interesting. You're representing the VA, right? Yes, Your Honor. And so you're saying the VA, despite what happened in Day v. McDonough, doesn't have any power over whether it wants to permit a Veteran to move on with an appeal despite a time limit issue, and by waiving it.  We're not challenging timeliness, or we agree with this claimant. . . Right, but you're saying that doesn't control the Veterans Court. The Veterans Court can still override that and say, I don't care, I, the Veterans Court, am going to reach this issue. And perhaps the distinction is, again. . . In direct tension with Day v. McDonough and Wood v. Milliard. I think that the distinction, again, would be because those cases really dealt with doesn't apply to the appeal to the Veterans Court. That the whole idea of a waivable defense really is about trial court litigation where there's a complaint and an answer, and affirmative defenses have to be raised at the time of an answer. And this is a different procedural, this is a different venue, it's a different, it's an appeals court, not a trial court, and the procedure a little differently. I think, certainly in this case, the court doesn't have to get to that parameters because there was no waiver. Okay, what is the government's position on the stop clock process that's being argued here, that that would apply? Assuming that we found equity in the court. Right, and before the Veterans Court, the Secretary conceded that it didn't have a problem with the stop clock approach. But the Veterans Court didn't find that it needed to reach that issue and decide that issue. So this case comes down to exclusively what happened in the pre-90-day period because everyone agrees that if we found due diligence, if we found the requirements of equitable tolling were satisfied when she filed as of October or whatever it was, that she met the stop clock, she met the time frame under the stop clock procedure, correct? Well, we would respectfully suggest that the court doesn't jurisdiction because that's an application of a lot of facts that isn't reviewable by this court because the court didn't need to, the Veterans Court didn't need to apply. No, no, no, but I'm just asking you hypothetically if that's, I mean, I'm not telling you how we would decide, we're not deciding how we're going to decide it. I'm just trying to frame what the question would be left in this case. We might not have a jurisdiction over that question. But does the government agree that stop clock works at the back end? So if she had exercised reasonable diligence up until the time she filed, the October date, then this case would be over. She would have met her burden under stop clock. If she had demonstrated causation and she had demonstrated diligence during the time period during which the extraordinary circumstances existed, then under the stop clock approach, the Veterans Court could have found that the time period was told. And so you're saying that we can't reach that here because we don't have a jurisdiction because that's a fact question. Correct. But in this case, you recognize there were really no facts. What you're saying is because they said nothing, then that was a finding. It wasn't that they were looking at the government's argument or what facts or what happened during that 90-day period. It was a zero. And you're just saying in light of zero, they get to find for you because he's got the birth, right? In light of the, again, the claimant through counsel had the opportunity to present a declaration, an affidavit, argument before the three-judge panel and presented no evidence on that on the basis of that absence of evidence. What about if she submitted an affidavit and she said, look, folks, I tried my best, but I was homeless? Is that sufficient? She says she tried her best. Does that shift the burden then to the government to come forward with some reason why it wasn't her best effort? I mean, that's a factual question that the Veterans Court would have to address in the first instance. Again, I think if she had... No, the government would have to address it in the first instance because if she put on that evidence, you'd have to decide whether you need to come forward with something else before the Veterans Court can decide that, right? Right. And would the government feel that it was necessary to come forward with some evidence in light of the statement that said, I tried my best? I think that's a very difficult question. I think part of the problem here is that Ms. Chico is the party in the best position to be able to identify to the court the facts and circumstances of her case and why equitable tolling should apply. The Secretary's really not in a position to conduct discovery or any kinds of questions. So in the absence of any kind of facts or evidence that the Secretary has, that's really why the burden is placed on the party seeking equitable tolling to put forth that evidence to the Veterans Court and explain what was going on during that time period. The quote from your brief or in response to the show cause order down below where you said Ms. Chico failed to demonstrate any diligence, was that in reference to the entire time period? Was that in reference to one portion of the time period? I think this is A22. Was it? Right. It just says, she also failed to demonstrate any due diligence in attempting to file her NOA. Right. And, you know, maybe at that time the VA was under the belief that the McCreary version of due diligence applied, which sort of suggests that you have to have due diligence throughout the entire 120-day period, and not the stop clock approach, which was focused in zero in on just a particular tolling period. And I'm just trying to understand this statement for purposes of what you may have waived or not waived. I don't read anything in the Secretary's response to the show cause order to waive or forfeit anything other than to concede that homelessness is an extraordinary circumstance that could warrant equitable tolling. I think it's telling that Ms. Chico's reply brief, which was permitted to file a reply brief to the Secretary's response, goes on and on and on about the stop clock approach and why that should apply to this circumstance, but not once draws the connection between the law and the facts of her case. So she had put the stop clock approach before the Veterans Court, argued that that's the appropriate standard that the Court should apply, but didn't go the extra step of connecting that law to the facts of her case. And that was the conclusion that the Veterans Court reached. Okay, thank you. Mr. Lipman, you will be flexible on the time because the government had a lot more to leave because of the questions. You know, meetings of words, they can speak for themselves, but mostly we find it in context. And so I'd like to turn the Court to pages 20 and 21 of the Joint Appendix. And I'm going to read where it begins, the last full paragraph. There is no indication in appellant's claims file... I'm sorry, I'm looking at page 20. Did you tell us? Yeah, that's what I have, 20, which is a section of the government's pleading. Yes. And the last full paragraph, where it says there is... Yes, okay, sorry, thank you. There is no indication in appellant's claims file, C file, that her homelessness was a result of her negligence or willful misconduct. Additionally, appellant states that her homelessness was due to economic hardship. Accordingly, it appears that appellant's homelessness was due to circumstances beyond her control. However, it does not appear that the facts of this case satisfy the remaining elements of the test articulated in McCreary, and that's important, and adhere to on reconsideration in McCreary 2. Although, and this is very important, although appellant's homelessness would have delayed, and notice that delayed is italicized, her filing of her NOA, so they conceded that her homelessness was a cause of the delay. There is no indication that her homelessness would have resulted in her untimely filing of her NOA. And again, the causation all comes down to whether you're going to follow McCreary or you're going to follow the stopwatch approach. That's all that is. Now, one more thing, and then it goes on, on the 120th day for filing her NOA was November 4, 2001. Accordingly, appellant had 29 days. Why doesn't she just say, well, she had 120 days? If there's no due diligence, why would you even focus on 29 days? I mean, if there's no due diligence in the earlier period. Yeah, I mean, it just makes no sense. From the date of the mailing of the board decision to file her NOA. And then, and this is important about what she said, appellant has not alleged that she was homeless during the period following the October 6, 2001 mailing of the board decision. She also failed to demonstrate any due diligence in attempting to file her NOA. I read that together. You have a topical sentence. Appellant has not alleged that she was homeless during the period following October 6, 2011 mailing of the board decision. And then everything else, it has to relate to that. Otherwise, it doesn't make sense. And finally, even the court realized that was what the contention was. If you look... Well, except they do go, in fairness, they do go on to say a phone call could have potentially preserved her appeal, additionally considering her presence within the area during the appeal period. Don't you think here, in these sentences, they're talking about the pre-90-day period? No, what they're talking about is, the whole thing is, yes, there's homelessness, but the critical part of the homelessness is she couldn't get mailing. She didn't have notice. She's out there, and that's what they concede. So they're saying that once she got the mailing and knew that the 120-day clock with the notice, the 120-day clock was ticking, or she had 29 days to do something, she could have mailed it, she could have hand-delivered it, whatever. So she's – they're right in the sense that if you follow McCreary, she will lose. But we're saying that that isn't – we're saying that the stop clock crutch, which is what they advocated down below, applies. And here I'd like to read on page four, which is part of the court's decision. It says, in this regard, the secretary argues that Mrs. Checco had 29 days between October 6th, which is the date the board remailed the decision, and the end of the 120-day judicial appeal period, but that she failed to demonstrate diligence during this period. That's their argument. And they go on and say, we don't care what they argued or what their submission was. There's no showing of any time. And just to reinforce it, during oral argument – Which oral argument, the one here? No, before the Veterans Court. The judge says – this is page 78. The judge says, she called the VA, finding out what – this is apropos of questioning of what Mrs. Checco, whether she did show due diligence in these callings. She goes, she called the VA to find out what's going on with her hearing and discovered that they had issued a board decision and had mailed it to a particular address. Would not that be a showing of due diligence? Talking about the period after the 90 days. No, Your Honor, we would argue, the secretary would argue that the September 27, 2001 contact with the ADHD showed the end of the extraordinary circumstances period. But what does that mean? I mean, unless we're Alice's Adventure in Wonderland, like we don't mean what we say, we kind of fake and it has all these different ambiguity. I mean, it seems clear that if you're saying there's a defined period of extraordinary circumstances, that means that during that period, there's tolling. Or if you're – that's not to be counted. I still haven't heard how conceptually the government could argue any other way. So what is your theory of this case? Granted, I mean, that's a fact that whether or not there was due diligence in this, we're just looking at the threshold period, is a fact question. So your theory is we have jurisdiction to overturn the board's conclusions or the state's conclusions with respect to that period because why is – what is the legal issue? Sure, sure, I understand. If you look at the reply brief, I've argued it. The question is, the jurisdictional limitation says you can't review court determinations, the fact. Court determinations, the fact. I'm arguing there's no court determination necessary. The parties stipulated or they conceded that fact. The fact, just because it's a fact, doesn't do it. But I guess in the back of the veteran court's decision at page 5, the bottom of the first paragraph, the court says this is so because Ms. Chaco has neither alleged nor demonstrated diligence during any period of time, any italicized. That seems to be... It seems to be overriding the government's fact finding. And, you know, again, the last sentence of the second paragraph, that oral argument again, despite the Secretary's repeated assertions that Ms. Chaco had not shown diligence, her counsel failed to even assert that she acted diligently. In sum, she again failed to carry her burden. So these look like findings or applications of law to fact or really applications of law to an absence of any demonstration of fact. Okay, if you buy the veterans court's characterization, there might be an argument here. But my argument is, do we have a concession or not? If this court believes that my interpretation is the most reasonable or really the only one, the only reasonable interpretation of what the government is asserting, then that takes the issue off the table. I don't have to come out and prove something that's already been stipulated. And so the court has jurisdiction to determine whether or not, as a matter of law, the court has violated the doctrine of stipulations, concessions, okay? And then if we would agree with you that there was some concession about diligence during the tolling period, then that still doesn't complete the inquiry. We'd have to then say, all right, the VA has proclaimed a waiver of the diligence issue. Now we have to figure out whether the Court of Appeals for Veterans Claims has the authority to nevertheless override that, as you call it, stipulation or concession, and still reach the issue. Right, I mean, you could look at Wood and Davis. Now, Davis said that you can't override a concession about an affirmative defense, okay? Can't do it. How much more logic does it take to say, well, you can waive an element of an issue? I mean, it seems to me to be entitled to the same amount of respect as a larger waiver of the whole issue. But I guess this gets back to the first question I asked you. I don't know, it felt like two hours ago. Sorry. About how are you challenging that portion of Bogue where Bogue said, the Veterans Court said, I don't care if the veteran agency ever waives this timeliness issue. We are still going to move forward as we wish. And I guess you're saying if we agree with you on concession, you would want us to overturn at least that portion of Bogue, because that's what Bogue said. Right, I mean, Bogue said you can't waive it either as a procedural default for oversight or as an affirmative waiver. And I'm saying they're wrong on both. They're wrong in the sense that, you know, we can raise it to make sure that the government doesn't overlook it. That's wrong. And they can't ram it down the party's throat and say we don't even care whether you want to waive it or not or even any parts of it. We have, through raw judicial power, we're telling you what to do. We don't care how you want to litigate it. We're more powerful, and this is what we're going to do, which kind of offends the... Anything further that you need to wrap up on? I just would like to point out that... I think it's telling the court that the court frame with the government's argued position was that it was 29 days, and so the due diligence argued just went on the back end of the 29th, and then they went off on their own and said nowhere was it argued or alleged. They're conflicted. Thank you.